UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENDALL MC CLENNON, | ) | No. 1:14-cv-03233 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Mannish S. Shah |
| vs. | ) | |
| | ) | |
| CITY OF CHICAGO, Chicago Police Officer RAYMOND PIWNICKI, #7858, MARGARET MCDEVITT as Special Representative for Chicago Police Officer BRIAN MCDEVITT, #13197, Chicago Police Officer THOMAS CAREY, #18795 | ) ) ) ) ) ) | Magistrate Judge Mary M. Rowland |
| | ) | |
| Defendants. | ) | Jury Demand |

## FIRST AMENDED COMPLAINT

1. The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983; the judicial code, 28 U.S.C. §1331 and 1343(a); the Constitution of the United States; and pendent jurisdiction as provided under 28 U.S.C. §1367(a).

## PARTIES

2. Plaintiff Kendall McClennon is an African American resident of the City of Chicago, Illinois.

3. Defendant Chicago Police Officers Raymond Piwnicki, Star #7858, Brian McDevitt, Star #13197,[1] and Thomas Carey, Star #18795 were, at the time of this occurrence, duly appointed Chicago Police Officers. Defendants engaged in the conduct complained of while on duty and in the course and scope of their employment with the City of Chicago.

---

[1] Chicago Police Officer Brian McDevitt passed away after the incident alleged herein. Pursuant to 735 ILCS 5/2-1008, Margaret McDevitt, the widow of Chicago Police Officer McDevitt, is named as the Special Representative for Officer McDevitt and is being sued as a personal representative responsible for defending him in this matter. In naming Margaret McDevitt as the personal representative for Officer McDevitt, Plaintiff will not seek any punitive damages against Ms. McDevitt.

1

4. At all times material to this complaint, Defendant Police Officers Piwnicki, McDevitt and Carey were acting under color of state law, ordinance, and/or regulation. Each is sued in his individual capacity.

5. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, is the employer and principal of the Defendant Police Officers, and is responsible for the policies, practices and customs of its Police Department, City Council, Office of Professional Standards, Independent Police Review Authority and Police Board.

## **FACTS**

6. On the evening of May 5, 2012, Plaintiff Kendall McClennon was attending a family gathering at 6519 South Fairfield Avenue in Chicago, Illinois.

7. Defendant Officers Piwnicki, McDevitt and Carey broke open a gate separating the yard of 6519 South Fairfield from the alley behind the residence.

8. Without permission or consent from any of the residents or guests of 6519 South Fairfield, Defendants Officers entered the back yard of the residence through the alley.

9. Without justification, Defendant Officers drew their guns from their holsters and pointed their weapons at Plaintiff McClennon and other residents and guests at the gathering.

10. Defendant Officers then physically attacked Plaintiff McClennon, striking him and forcing his body down on to a wooden deck.

11. The Defendant Officers cuffed both of Plaintiff McClennon's hands behind his back and they then struck him about his body or failed to intervene to stop said strikes despite having the opportunity to do so.

12. A short time later, while Plaintiff McClennon was still cuffed with his hands behind his back, Defendant Piwnicki, without any justifiable reason whatsoever, shot his Taser at

2

Case: 1:14-cv-03233 Document #: 18 Filed: 08/01/14 Page 3 of 9 PageID #:52

Plaintiff McClennon.

13. Defendant Officer Piwnicki then used his Taser to "Drive Stun" Plaintiff McClennon, while Plaintiff McClennon was still handcuffed behind his back.

14. Defendant Officers McDevitt and Carey, were standing nearby when Defendant Piwnicki tased Plaintiff McClennon and they failed to protect Plaintiff McClennon from the shocks and pain therefrom despite having a duty and opportunity to intervene.

15. Plaintiff McClennon did not physically attack, assault, threaten or physically resist the Defendant Officers in any way.

16. Throughout the incident, Defendant Officers used racially disparaging language and insulted Plaintiff McClennon, his family and other guests at the gathering.

17. Defendant Officers subsequently charged Plaintiff McClennon with Aggravated Battery of a Police Officer, Possession of Cannabis, Resisting an Officer and Urinating on the Public Way.

18. Defendant Officers made out false and incomplete official reports and gave a false and incomplete version of the events to their superiors, falsely claiming Plaintiff McClennon physically resisted their attempts to stop, frisk and cuff him and that Plaintiff McClennon battered Defendnat Piwnicki in order to cover up their misconduct and assist the prosecution of Plaintiff McClennon.

19. While in police custody, Plaintiff McClennon was taken to Holy Cross Hospital, where he received treatment for the injuries he sustained as a result of the unnecessary and excessive force used by the Defendant Officers.

20. As a direct and proximate result of the Defendant Officers' actions, Plaintiff Jackson suffered and continues to suffer, *inter alia*, bodily injury, pain, suffering, loss of liberty,

lost wages, severe mental distress, fear, anguish and/or humiliation, and medical expenses.

## COUNT I
### [42 U.S.C. §1983 Claim for Excessive Force/Failure to Intervene]

21. Plaintiff re-alleges paragraphs 1 through 20.

22. The acts of Defendant Officers Piwnicki, McDevitt and Carey repeatedly striking and deploying a Taser against Plaintiff and/or in failing to prevent said abuse violated Plaintiff's rights under the Fourth Amendment to the United States Constitution to be secure in his person, papers and effects against unreasonable searches and seizures, and his right to due process under the Fourteenth Amendment to the United States Constitution, and thus violated 42 U.S.C. §1983.

23. The actions of Defendant Officers Piwnicki, McDevitt and Carey were the direct and proximate cause of the violations of Plaintiff's Fourth Amendment rights, his physical injuries, mental suffering, anguish and humiliation and expenses, as set forth above.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages against Defendants Piwnicki, McDevitt and Carey and because they acted maliciously, wantonly or oppressively, punitive damages, plus the costs of this action, plus attorney's fees and such other relief as this Court deems equitable and just.

## COUNT II
### [42 U.S.C. § 1983 *Monell* Policy Claim Against Defendant City of Chicago]

24. Plaintiff re-alleges paragraphs 1 through 23.

25. The actions of Defendants Piwnicki, McDevitt and Carey were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the City of Chicago, its police department, its Police Board, its Office of Professional Standards (O.P.S.), Internal Affairs Division (I.A.D.) and Independent Police Review Authority (I.P.R.A), its Personnel Division,

and/or its Superintendents of police.

26. At all times material to this complaint the Defendant City and its police department, police Superintendents, O.P.S., I.A.D. and I.P.R.A., Personnel Division and/or Police Board had interrelated *de facto* policies, practices, and customs which included, *inter alia*, a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers who commit acts of excessive force; and/or b) the police code of silence; and/or c) encouragement of wrongful arrests, prosecutions, and imprisonments.

27. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in criminal cases where they and their fellow officers have used excessive force.

28. The fact that the aforementioned code of silence exists, and that its adverse impact is allowed to occur through the actions and inactions of high ranking police officials including police Superintendents, O.P.S. Directors and I.P.R.A Directors is also evidenced by the fact that while former Superintendent Martin, former O.P.S. Director Fogel, former Mayor Richard M. Daley and former O.P.S. Director Shines have all acknowledged publicly that they are aware of the existence of the custom and practice of a police code of silence, they have not acted to eliminate the code or to counteract its impact on police discipline, the use of excessive force, fabrication of evidence and false arrests and prosecutions.

29. The *de facto* policies, practices and customs of failing to hire, train, supervise,

5

monitor, discipline, counsel or control police misconduct, the code of silence and the encouragement of false arrests and prosecutions are interrelated and exacerbate the effects of each other, to, in the words of former O.P.S. Director Fogel, "institutionalize police lying" and "immunize police officers from discipline."

30. Additionally, that the unconstitutional actions of the Defendant Officers were part of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policymakers, including, but not limited to, Mayor Richard Daley and Chicago Police Department Superintendents, as well as by a wide range of other police officials, officers, and divisions of the Department, including its Internal Affairs Division, the Detective Division, and the Public Affairs Section. This involvement and ratification is further demonstrated, *inter alia*, by the public statements of these policymaking officials, and the Department's total failure to investigate the unconstitutional conduct of the Defendant Officers or other Chicago Police Officers, or to discipline them, in this and/or other cases, for their unconstitutional conduct.

31. As part of this widespread *de facto* policy of immunizing police officers from discipline, I.P.R.A has continued the pattern and practice of willfully failing to adequately investigate citizen complaints of police misconduct. The overwhelming majority of complaints result in outcomes where the officers involved face no form of discipline whatsoever. As a result of I.P.R.A.'s failure to properly investigate and recommend disciplinary action, police officers have the understanding that they can violate the rights of Chicago residents with impunity, knowing that the likelihood of being held accountable by the City of Chicago for their unlawful actions is extremely rare.

32. The aforementioned policies, practices and/or customs of failing to hire,

6

supervise, discipline, monitor, transfer, counsel, and control, police misconduct, the police code of silence, and the encouragement of excessive force, false arrests, imprisonments, prosecutions, and convictions, separately and together, proximately caused injury to Plaintiff McClennon in this case, *inter alia*, because the Defendant Officers had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that their denials would go unchallenged by these supervisors and fellow officers, from the police Superintendents, Police Board, and Directors of I.P.R.A. and that they were effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

33. Based on the belief and understanding that each of them would be protected from significant career consequences by fellow officers, by the department and by I.P.R.A, the Defendant Officers felt empowered to violate the rights of Plaintiff McClennon.

34. Specifically, Defendant Piwnicki has repeatedly been accused of misconduct, including *inter alia*, allegations of excessive force, false arrest, and illegal search. He has amassed over 50 complaints of official misconduct during his employment with the Chicago Police Department. Upon information and belief, he has not been promptly and adequately disciplined for such egregious misconduct.

35. In addition, Defendant Carey has repeatedly been accused of misconduct, including, *inter alia*, allegations of excessive force, false arrest, and illegal search. Upon information and belief, he has not been promptly and adequately disciplined for such egregious misconduct.

36. In addition, Defendant McDevitt had repeatedly been accused of misconduct, including, *inter alia*, allegations of excessive force, false arrest, and illegal search. Upon

information and belief, he had not been promptly and adequately disciplined for such egregious misconduct.

37. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant Officers to commit the aforesaid acts against Plaintiff McClennon and therefore acted as the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff McClennon.

38. Additionally, said failure to properly hire, train, supervise, discipline, monitor, control, counsel, and transfer Defendants Piwnicki, McDevitt and Carey, was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Plaintiff McClennon.

39. These policies, practices and customs encouraged, *inter alia*, police misconduct, including, but not limited to, excessive force, the making of false statements and reports, and were, separately and together, the moving force and a direct and proximate cause of the unconstitutional acts committed by Defendants Piwnicki, McDevitt and Carey in this case and the injuries sustained by Plaintiff McClennon.

WHEREFORE, Plaintiff demands judgment against Defendant City of Chicago for substantial compensatory damages, plus costs and attorneys' fees and whatever additional relief this Court finds equitable and just.

## COUNT III
### [745 ILCS 10/9-102 Claim Against Defendant City of Chicago]

40. Plaintiff re-alleges paragraphs 1 through 39.

41. Defendant City of Chicago was the employer of Defendants Piwnicki, McDevitt and Carey at all times relevant to this complaint.

8

42. Defendants Piwnicki, McDevitt and Carey committed the acts alleged above under color of law and in the scope of his employment as an employee of the City of Chicago.

WHEREFORE, Plaintiff, pursuant to 745 ILCS 10/9-102, demands judgment against the Defendant City of Chicago in the amount awarded to Plaintiff McClennon against the Defendants as damages, attorneys' fees, costs and interest, and/or for any settlement entered into between the Plaintiff and any Defendant and for whatever additional relief this Court deems equitable and just.

Respectfully submitted,

Dated: August 1, 2014

/s/ Joey L. Mogul
JOEY L. MOGUL
SARAH GELSOMINO
PEOPLE'S LAW OFFICE
1180 N. Milwaukee
Chicago, IL 60642
773/235-0070

CHERYL BORMANN
Law Office of Cheryl T Bormann
327 S Plymouth Court
Suite 201
Chicago, Illinois 60604
312/588-5011

Attorneys for Plaintiff

**Plaintiff Demands Trial By Jury**