**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENDALL MCCLENNON, | ) | Case No. 14-cv-03233 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Mannish S. Shah |
| vs. | ) | |
| | ) | Magistrate Judge Mary M. Rowland |
| CITY OF CHICAGO, Chicago Police Officer | ) | |
| RAYMOND PIWNICKI, #7858, MARGARET | ) | |
| MCDEVITT as Special Representative for | ) | |
| Chicago Police Officer BRIAN MCDEVITT, | ) | |
| #13197, Chicago Police Officer THOMAS | ) | |
| CAREY, #18795, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT OFFICERS' ANSWER TO
## PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants Officers, Raymond Piwnicki ("Officer Piwnicki"), Thomas Carey ("Officer Carey") and Margaret McDevitt, as Special Representative for Chicago Police Officer Brian McDevitt ("Margaret McDevitt") (collectively "Defendant Officers"), through one of their attorneys, Dana O'Malley, Senior Counsel for the City of Chicago, hereby submit their Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint.

1.      Plaintiff Kendall McClennon was physically brutalized, tased, and subjected to racist verbal abuse by Chicago Police Officer Raymond Piwnicki, who has amassed eighty-nine civilian complaints of misconduct in the span of fourteen years with the Chicago Police Department. Approximately half of these complaints allege Defendant Piwnicki used excessive force, and many include allegations that he spewed racial epithets and slurs at his victims, almost all of whom are Black and/or Latinx.[1]

**ANSWER: Officer Piwnicki admits that Plaintiff was tased by Officer Piwnicki. Answering further, Officer Piwnicki admits, upon information and belief, that between 2000 and 2012 there were eighty-nine complaint registers ("CRs") alleged against him. Officer Piwnicki admits that approximately half of these allegations contained in these CRs**

---

[1] The term Latinx is a gender-neutral alternative to Latino/a

include allegations of excessive force and some include allegations of use of profanity. **Officer Piwnicki answering further, upon information and belief, admits that many of the complainants were Black or Latinx. Officer Piwnicki denies the remaining allegations.**

**Officer Carey admits that Plaintiff was tased by Officer Piwnicki. Officer Carey lacks sufficient knowledge to either admit or deny the allegations relating to civilian complaints made against Officer Pinicki. Answering further, Officer Carey denies the remaining allegations.**

**Margaret McDevitt admits, upon information and belief, that Plaintiff was tased by Officer Piwnicki. Margaret McDevitt lacks sufficient knowledge to either admit or deny the remaining allegations contained in this paragraph.**

2. Despite awareness of Defendant Piwnicki's repeated use of excessive force and racist verbal abuse, the City of Chicago failed to properly and meaningfully supervise and discipline Defendant Piwnicki, thereby allowing him to act with impunity resulting in Defendant Piwnicki's abuse and mistreatment of Plaintiff McClennon, who became the eighty-eighth victim of at least eighty-nine known victims.

**ANSWER: Officer Piwnicki, upon information and belief, denies the allegations contained in this paragraph.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to either admit or deny the allegations contained in this paragraph.**

3. Plaintiff McClennon, like scores of others, complained of physical abuse and mistreatment by Defendant Piwnicki. The City of Chicago, by and through its Chicago Police Department, not only failed to discipline Defendant Piwnicki in response to these complaints and other known misconduct, but instead, condoned and encouraged his misconduct, and later promoted him to detective shortly after he abused Plaintiff McClennon.

**ANSWER: Officer Piwnicki admits that he was promoted to detective. Answering further, Officer Piwnicki denies that the City of Chicago failed to discipline him in response to the complaint registers lodged against him. Officer Piwnicki, upon information and belief, denies the remaining allegations contained in this paragraph.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to either admit or deny the allegations contained in this paragraph.**

4. Plaintiff McClennon seeks just compensation for the physical pain, mental anguish, distress, malicious prosecution and other damages he suffered as a result of this painful and traumatic incident, and to hold Defendant Piwnicki, the other Defendant Officers and the City of Chicago accountable for the violation of his rights under the U.S. Constitution and Illinois state law.

**ANSWER: Officers Piwnicki and Carey admit that Plaintiff seeks the damages set forth in this paragraph, but deny the wrongdoing alleged herein.**

**Margaret McDevitt, upon information and belief, admits that Plaintiff seeks the damages set forth in this paragraph but denies the wrongdoing alleged herein.**

### Jurisdiction

5.     The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the judicial code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States; and supplemental jurisdiction as provided under 28 U.S.C. § 1367(a).

**ANSWER:  Defendant Officers admit that jurisdiction is proper.**

### Parties

6.     Plaintiff Kendall McClennon is an African American resident of the City of Chicago, Illinois.

**ANSWER: Defendant Officers, upon information and belief, admit the allegations contained in this paragraph.**

7.     Defendant Chicago Police Officers Raymond Piwnicki,[2] Star #7858, Brian McDevitt, Star #13197,[3] and Thomas Carey, Star #18795 were, at the time of this occurrence, duly appointed Chicago Police Officers. Defendants engaged in the conduct complained of while on duty and in the course and scope of their employment with the City of Chicago.

**ANSWER: Officer Piwnicki and Officer Carey admit that at the time of the occurrence they were Chicago Police Officers engaged in the course and scope of their employment, but further deny that they engaged in the misconduct alleged by Plaintiff herein.**

**Margaret McDevitt, upon information and belief, admits that at the time of the occurrence her deceased husband, Brian McDevitt, was engaged in the course and scope of his employment.  Answering further Margaret McDevitt lacks sufficient information or knowledge to admit or deny the remaining allegations contained in this paragraph.**

---

[2] At the time of the events that gave rise to this lawsuit, Defendant Piwnicki was a police officer with Chicago Police Department. During the course of these proceedings, Plaintiff's counsel learned that Defendant Piwnicki was promoted to the rank of detective in the Chicago Police Department.

[3] Chicago Police Officer Brian McDevitt passed away after the incident alleged herein. Pursuant to 735 ILCS 5/2-1008, Margaret McDevitt, the widow of Chicago Police Officer McDevitt, is named as the Special Representative for Officer McDevitt and is being sued as a personal representative responsible for defending him in this matter. In naming Margaret McDevitt as the personal representative for Officer McDevitt, Plaintiff will not seek any punitive damages against Ms. McDevitt.

8.     At all times material to this complaint, Defendant Police Officers Piwnicki, McDevitt and Carey were acting under color of state law, ordinance, and/or regulation. Each is sued in his individual capacity.

**ANSWER: Officer Piwnicki and Officer Carey admit the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, admits the allegations contained in this paragraph.**

9.     Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, is the employer and principal of the Defendant Police Officers, and is responsible for the policies, practices and customs of its Police Department, City Council, Office of Professional Standards, Independent Police Review Authority and Police Board.

**ANSWER: Officer Piwnicki and Officer Carey admit that the City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and was their employer at the time of the event alleged herein. Officer Piwnicki and Officer Carey lack sufficient information or knowledge to admit or deny the remaining allegations contained in this paragraph.**

**Margaret McDevitt, upon information or belief, admits that the City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and was her deceased husband, Brian McDevitt's, employer at the time of the event alleged herein. Margaret McDevitt lacks sufficient information or knowledge to admit or deny the remaining allegations contained in this paragraph.**

### Plaintiff McClennon's Encounter with Defendant Officers on May 5, 2012

10.     On the evening of May 5, 2012, Plaintiff Kendall McClennon was attending a family gathering at his cousin's house at 6519 South Fairfield Avenue in Chicago, Illinois with several of his family members and their young children.

**ANSWER: Defendant Officers lack sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

11.     At around 7 p.m., Plaintiff McClennon stepped out of the backyard, into the alley and relieved himself. Moments later he returned to the backyard.

**ANSWER: Officers Piwnicki and Carey admit that at around 7 p.m. Plaintiff stepped into the alley and relieved himself. Answering further, Officers Piwnicki and Carey deny that Plaintiff has accurately set forth the events which occurred on May 5, 2012. Officers Piwnicki and Carey lack sufficient information or knowledge to admit or deny the remaining allegations contained in this paragraph.**

4

**Margaret McDevitt, upon information and belief, admits that at around 7 p.m. Plaintiff stepped into the alley and relieved himself. Answering further, Margaret McDevitt states that she lacks sufficient information or knowledge to admit or denies the remaining allegations contained in this paragraph.**

12. Without permission or consent from any of the residents or guests at 6519 South Fairfield, Defendant Officers forcibly entered the backyard of the residence from the alley.

**ANSWER: Officer Piwnicki and Officer Carey admit that they entered the backyard at 6519 South Fairfield. Officer Piwnicki and Carey admit that they did not receive permission or consent to enter and further deny that permission or consent was required for entry. Officers Piwnicki and Carey deny the remaining allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, admits that her deceased husband, Brian McDevitt, entered the backyard at 6519 South Fairfield. Answering further, Margaret McDevitt lacks sufficient information or knowledge to admit or deny the remaining allegations contained in this paragraph.**

13. When entering the backyard of 6519 South Fairfield, Defendant Officers Piwnicki, McDevitt and Carey broke open the backyard gate separating the yard from the alley behind the residence, breaking the door lock and damaging the gate frame and door.

**ANSWER: Officers Piwnicki and Carey deny the allegations in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

14. Without justification, Defendant Officers drew their guns from their holsters and pointed their weapons at Plaintiff McClennon and other residents and guests at the gathering.

**ANSWER: Officer Piwnicki and Officer Carey deny the allegations in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

15. When Plaintiff McClennon questioned why the Defendant Officers had their guns out, pointing out the presence of young children in the backyard, Defendant Piwnicki physically attacked Plaintiff McClennon, forcing his body down on to a wooden deck.

**ANSWER: Officer Piwnicki admits that he used an emergency takedown and an open hand strike on Plaintiff. Officer Piwnicki denies that Plaintiff has accurately set forth the events which occurred on May 5, 2012 and further denies the remaining allegations contained in this paragraph.**

**Officer Carey admits, upon information and belief, that Officer Piwnicki used an emergency takedown and an open hand strike on Plaintiff. Officer Carey denies that Plaintiff has accurately set forth the events which occurred on May 5, 2012 and further denies the remaining allegations contained in this paragraph.**

**Margaret McDevitt admits, upon information and belief, that Officer Piwnicki used an emergency takedown and an open hand strike on Plaintiff. Margaret McDevitt lacks sufficient information or knowledge to admit or deny the remaining allegations contained in this paragraph.**

16. Defendant Piwnicki cuffed Plaintiff McClennon's hands behind Plaintiff's back and struck Plaintiff about his body. Defendants McDevitt and Carey failed to intervene to stop said physical abuse despite having the opportunity to do so.

**ANSWER: Officer Piwnicki and Officer Carey admit that Plaintiff was handcuffed behind his back. Answering further Officer Piwnicki and Officer Carey deny the remaining allegations contained in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

17. The Defendant Officers also forced two other Black men in the backyard down on the back deck and handcuffed them without any justification or reason.

**ANSWER: Officer Piwnicki and Officer Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

18. The Defendant Officers then observed Plaintiff McClennon's sister, Cicely McClennon, with a camera in her hand.

**ANSWER: Officer Piwnicki and Officer Carey admit that there was a camera found at the scene of the incident but deny the remaining allegations contained in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

19. The Defendant Officers forcibly removed the camera from her hand and handcuffed her behind her back.

**ANSWER: Officer Piwnicki and Officer Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

20.     Plaintiff McClennon requested the Defendant Officers leave his sister alone.

**ANSWER: Officer Piwnicki and Officer Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

21.     Defendant Piwnicki then shot his TASER gun at Plaintiff McClennon, while Plaintiff was on the ground with his hands still handcuffed behind his back.

**ANSWER: Officer Piwnicki admits that he deployed his taser at Plaintiff on the date of the incident but denies that Plaintiff has accurately set forth the events which occurred on the date of the incident and further denies the remaining allegations contained in this paragraph.**

**Officer Carey admits that Officer Piwnicki deployed his taser at Plaintiff on the date of the incident but denies that Plaintiff has accurately set forth the events which occurred on the date of the incident and further denies the remaining allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, admits that Officer Piwnicki used his taser on the date of the incident.  Answering further, Margaret McDevitt, lacks sufficient information or knowledge to admit or deny the remaining allegations contained in this paragraph.**

22.     Defendant Piwnicki then used his TASER gun to "drive stun" Plaintiff McClennon in the head, again while Plaintiff McClennon was on the ground with his hands handcuffed behind his back.

**ANSWER: Officer Piwnicki admits that he used his taser to "drive stun" Plaintiff on the date of the incident, but denies that Plaintiff has accurately set forth the events which occurred on the date of the incident and further denies the remaining allegations contained in this paragraph.**

**Officer Carey admits that Officer Piwnicki used his taser to "drive stun" Plaintiff on the date of the incident, but denies that Plaintiff has accurately set forth the events which occurred on the date of the incident and further denies the remaining allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, admits that Officer Piwnicki used his taser on the date of the incident.  Answering further, Margaret McDevitt, lacks sufficient**

information or knowledge to admit or deny the remaining allegations contained in this paragraph.

23. Defendant Officers McDevitt and Carey were standing nearby when Defendant Piwnicki tased Plaintiff McClennon and they failed to protect Plaintiff McClennon from the shocks and pain therefrom despite having the duty and opportunity to intervene.

**ANSWER: Officer Piwnicki admits that he tased Plaintiff but denies the remaining allegations contained in this paragraph.**

**Officer Carey admits that Officer Piwnicki tased Plaintiff but denies the remaining allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, admits that Officer Piwnicki used his taser on the date of the incident. Answering further, Margaret McDevitt, lacks sufficient information or knowledge to admit or deny the remaining allegations contained in this paragraph.**

24. Plaintiff McClennon did not physically attack, assault, threaten or physically resist the Defendant Officers in any way.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

25. Throughout the incident, Defendant Piwnicki used racially derogatory language and insulted Plaintiff McClennon, his family and other guests at the gathering, at one point calling them "animals."

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

26. Defendants Piwnicki, McDevitt and Carey agreed to conspire with one another to complete false and incomplete official reports, give a false and incomplete version of the events to their superiors, and file false charges against Plaintiff McClennon. Specifically, Defendant Officers falsely claimed Plaintiff McClennon physically resisted Defendant Piwnicki's attempt to stop, frisk and handcuff him and that Plaintiff McClennon battered Defendant Piwnicki by grabbing Defendant Piwnicki's right arm and cutting him. These charges were false and were initiated by the Defendant Officers in order to cover up their misconduct.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

8

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

27.     While in police custody, Plaintiff McClennon was taken to Holy Cross Hospital, where he received treatment for the injuries he sustained as a result of the unnecessary and excessive force used by Defendant Piwnicki and the other officers.

**ANSWER: Officers Piwnicki and Carey admit, upon information and belief, that Plaintiff was taken to Holy Cross Hospital for treatment and deny the remaining allegations contained in this paragraph.**

**Margaret McDevitt admits, upon information and belief, that Plaintiff was taken to Holy Cross Hospital for treatment.  Answering further, Margaret McDevitt lacks sufficient information or knowledge to either admit or deny the remaining allegations contained in this paragraph.**

### Defendant Officers Maliciously Prosecuted Plaintiff McClennon

28.     Defendant Officers subsequently charged Plaintiff McClennon with Aggravated Battery of a Police Officer, Resisting an Officer, Possession of Cannabis and Urinating on the Public Way, forcing Plaintiff McClennon to retain attorneys and appear in court to defend himself on several occasions over the course of several years.[4]

**ANSWER: Officers Piwnicki and Carey admit that Plaintiff was charged with Aggravated Battery of a Police Officer, Resisting an Officer, Possession of Cannabis and Urinating on the Public Way.  Officers Piwnicki and Carey admit that Plaintiff was required to appear in court as a result of these charges.  Officers Piwnicki and Carey deny the remaining allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, admits that Plaintiff was charged with Aggravated Battery of a Police Officer, Resisting an Officer, Possession of Cannabis and Urinating on the Public Way.  Answering further, Margaret McDevitt lacks sufficient information or knowledge to either admit or deny the remaining allegations contained in this paragraph.**

29.     Both Defendants Piwnicki and Carey attended court dates in the criminal proceedings, and both appeared at the courthouse at Plaintiff McClennon's criminal trial.

**ANSWER: Officers Piwnicki and Carey admit the allegations in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

---

[4] Aggravated Battery of a Police Officer is a class 2 felony. *See* 720 ILCS 5/12-3.05(d)(4) and (h). If Plaintiff McClennon was wrongfully convicted of this crime, he could have been sentenced to serve three to seven years in prison. *See* 730 ILCS 5/5-4.5-35.

30.    On November 16, 2016, Defendant Piwnicki testified at Plaintiff McClennon's criminal trial and provided false testimony about the events of May 5, 2012.

**ANSWER: Officer Piwnicki admits that he testified at Plaintiff McClennon's criminal trial on November 16, 2016.  Answering further, Officer Piwnicki denies the remaining allegations contained in this paragraph.**

**Officer Carey, upon information and belief, admits that Officer Piwnicki testified at Plaintiff McClennon's criminal trial on November 16, 2016.  Answering further, Officer Carey lacks sufficient information or knowledge to either admit or deny the remaining allegations contained in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

31.    At the conclusion of the trial on November 16, 2012, Plaintiff McClennon was acquitted and the criminal proceeding was terminated in his favor.

**ANSWER: Officer Piwnicki admits the allegations contained in this paragraph.**

**Upon information and belief, Officer Carey and Margaret McDevitt, admit the allegations contained in this paragraph.**

### Defendant Piwnicki's Prior Acts of Excessive Force, Racist Verbal Abuse and other Official Misconduct

32.    Plaintiff McClennon is not the first to allege that Defendant Piwnicki has engaged in excessive force, racist verbal abuse, false arrest and malicious prosecution.

**ANSWER: Officer Piwnicki admits that he was the subject of citizen complaints alleging excessive force, racist verbal abuse, and false arrest.  Officer Piwnicki lacks sufficient information or knowledge to admit or deny that there were prior malicious prosecution claims asserted against him.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

33.    Defendant Piwnicki has repeatedly engaged in a pattern and practice of filing false charges and engaging in physical and racist abuse against people of color in the City of Chicago.

**ANSWER: Officer Piwnicki denies the allegations contained in this paragraph.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

34.     To date, there have been eighty-nine complaints of misconduct filed against Defendant Piwnicki in a fourteen-year time span, from the time he started with the Chicago Police Department in June of 1998 through December 5, 2012.

**ANSWER: Officer Piwnicki denies the allegations of misconduct contained in these complaints, but admits the remaining allegations contained in this paragraph.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

35.     In 48.3% of the eighty-nine complaints, Defendant Piwnicki was accused of engaging in excessive force; he was also accused of using racist verbal abuse in 20.2% of the eighty-nine complaints, including but not limited to the following allegations:

a.      On August 13, 2000, a Black pregnant woman alleged she was stopped at gunpoint by an unidentified partner of Defendant Piwnicki, who forced her to get on the ground. She was handcuffed and placed in the back of a squad car where she got into a verbal argument with Defendant Piwnicki who slapped her in her face. Defendant Piwnicki's partner also said "we don't like black pregnant women" and made other derogatory statements of a racist and sexist nature. (CR 266694);

b.      On August 24, 2000, a Black man alleged he was with his cousin when Defendant Piwnicki and his partner, Officer Gade, approached them in an unmarked police car in an alley and told them to come to the car. The victim ignored the officer's request. Defendant Piwnicki then approached the victim and sprayed him in the face with pepper spray. Officer Gade then hit him in the face with a flashlight. The victim fell and balled up on the ground, where Defendant Piwnicki and Officer Gade repeatedly kicked him. The victim was handcuffed, taken to the station and the officers refused the victim's request for medical treatment. (CR 265117);

c.      On October 26, 2000, a Black man alleged that he was walking to a restaurant when he was stopped by Chicago Police Officers, who drove their car onto the sidewalk. He was searched, and even though they did not find any contraband on him, they accused him of possessing narcotics. The victim was arrested, handcuffed and put in a squad car. While cuffed in the car, Defendant Piwnicki punched and slapped the victim in the face, and punched him in the stomach. (CR 267343);

d.      On November 27, 2000, a Latino man alleged that he was walking down the street when Defendant Piwnicki and two other Chicago Police Officers approached him, stopped him, and searched him for drugs. Defendant Piwnicki slapped the victim in the face, one of Defendant Piwnicki's partners elbowed him and also slapped him in the face, and the third partner threatened the victim and called him a "Fucking Puerto Rican." An unrelated civilian witnessed this incident and reported it to the Office of Professional Standards. (CR 267496);

11

e.      On July 9, 2001, a Black man alleged that he was riding his bike across a field when Defendant Piwnicki and Officer Smith drove their police car into him and pinned him against a fence. Defendant Piwnicki exited the vehicle and pushed the victim's head into the ground and struck him twice on the back of his head. The victim received medical treatment for his injuries. Defendant Piwnicki and his partner falsely charged the victim with possession of a controlled substance and the criminal case was dismissed. The victim subsequently sued Defendant Piwnicki and the City of Chicago and the case was settled. (CR 272894);

f.      On March 8, 2002, a Black man (the victim) alleged that he was walking with his cousin, sister and girlfriend, when they were approached by a police car. Defendant Piwnicki and Officer Smith exited the car with their guns drawn. Officer Smith pushed the victim against a wall, handcuffed him and put him in a squad car, where Defendant Piwnicki punched the victim in the face. The officers accused the victim of being involved in a car accident that caused damage to a police vehicle. When the victim denied the allegations, one of the officers said "this one is going on you." When the victim asked why he was being falsely charged an officer said to him "Shut up you black bitch. You are a waste of sperm, nigger." (CR 279202);

g.      On March 23, 2002, a thirteen-year-old Black girl alleged that she was playing with her sibling and cousins when she threw a stick in the street as Defendant Piwnicki and Officer Smith were driving by. The Officers exited their car. Defendant Piwnicki approached the young victim, pushed her face with his hand, grabbed her arm pulled it behind her back, threatened to "smack the shit out of her" and called her and the other children "cocksuckers." (CR 279250);

h.      On June 2, 2002, a Latino man alleged that he was driving with his wife, father and brother when he was stopped by Defendant Piwnicki and Officer Smith. After he was stopped, Defendant Piwnicki told the victim to "put his fucking hands up," grabbed him, yanked him out of his car and handcuffed him. When the victim asked what was going on, Defendant Piwnicki told him "to shut the fuck up" and smacked him on the backside of his head. When the victim attempted to read Defendant Piwnicki's badge, Piwnicki told him not to look at him. Defendant Piwnicki also told the victim's wife to "shut the fuck up" and ordered her away from the car. The complainant was not arrested but reported the incident to the Office of Professional Standards (OPS), identifying the license plate to the car driven by Defendant Piwnicki. (CR 281125);

i.      On August 13, 2002, a Black woman alleged that while she was standing inside the gate of her apartment building she was questioned by Defendant Piwnicki as to where she lived. When she responded "I live here where I am standing," Defendant Piwnicki stated "you better tell me, bitch," and threatened to throw her to the ground and arrest her for trespassing. When the victim countered that he could not do that because she was not trespassing, Defendant Piwnicki grabbed her by the arm, called her a "cunt," threatened to put marijuana on her,

12

handcuffed her and said "you had to get fucking smart on me now you are going to jail." Defendant Piwnicki cuffed the complainant tightly, and when she asked why he put the handcuffs on so tight, Defendant Piwnicki said "Shut up you cunt nigger bitch," and backhanded her across the right side of her face. After Defendant Piwnicki put her in his squad car, she questioned "why did you put your hands on me?;" in response, Defendant Piwnicki stopped the car, grabbed the victim's hair and struck her repeatedly in the face. Later, at the police station, Defendant Piwnicki grabbed the victim by the neck, threw her down on a bench, and said "shut up you fucking cunt" after the victim asked to speak with a sergeant. The complainant also alleged that Officer Smith, Defendant Piwnicki's partner, witnessed the misconduct and failed to report it. Defendant Piwnicki falsely charged the victim with drinking on the public way. Unrelated civilian witnesses corroborated the victim's allegations of physical and verbal abuse and the victim received medical treatment for her injuries. (CR 283229)[5]

j.  On May 10, 2003, three Latino men and two Latina women were driving in a car and attempting to park when the drivers in two different vehicles behind them began honking their horns. After parking his car, one of the male victims was approached and confronted by Defendant Piwnicki, who was in plainclothes and said "What the fuck, why are you rolling your eyes?" When this victim responded he didn't know Defendant Piwnicki, Defendant Piwnicki said "Shut the fuck up, wetback." The victim told Defendant Piwnicki to leave them alone, when a white female officer, Officer Chapin, who was also in plainclothes, approached and said "You don't know who you are fucking with," while drawing her firearm. When the victim started to write down the license plates of the cars driven by Defendant Piwnicki and Officer Chapin, the female officer told Defendant Piwnicki they should go. As Defendant Piwnicki was leaving the scene, he punched the victim in the face, breaking his glasses. A second Latino male victim in the car corroborated the allegations of the first Latino male victim. The second victim also reported that as Defendant Piwnicki was leaving he also punched the second victim in the jaw and said "You ain't going to do nothing! Fuck you, you spics, you wetbacks." The two female passengers corroborated the versions given by male victims and further noted that both Defendant Piwnicki and Officer Chapin made derogatory remarks saying "fucking Mexicans" and "stupid Mexicans." (CR 289333);

k.  On October 5, 2003, two Black men were approached by Defendant Piwnicki and Officer Rigan after one of the Black men, victim A, was in an altercation with a third party. According to victim A, when Defendant Piwnicki

---

[5] The Office of Professional Standards (OPS) originally sustained allegations against Defendant Piwnicki for striking the victim in the face and directing numerous profanities at her including "bitch," "nigger," and "cunt." The OPS also sustained an allegation against Officer Smith for disobedience of a direct order for, *inter alia*, failing to stop the abuse of the victim and failing to take any action to report it to a supervisor. During the command channel review, Defendant Piwnicki's supervisors objected to the findings, and, upon information and belief, the findings were overturned.

and Officer Rigan approached, they asked the third party if they were having a problem with these "Niggers and animals." Defendants Piwnicki and his partner then punched victim A in the neck, knocked him to the ground and picked him up and then kneed him in the groin several times. Victim B alleges that he was punched about his body, knocked to the ground, and while on the ground he was handcuffed and kicked about his body. Victim A witnessed Defendant Piwnicki and Officer Rigan punch and kick victim B. Victim B observed Defendant Piwnicki and Officer Rigan punch victim A in the neck and knee him in the side. Both victims received medical treatment for their physical injuries. (CR 292855);

l.       On September 29, 2005, a Black wife and husband were at the courthouse at 1340 S. Michigan to attend a court date for a relative. The wife alleges that while she was attempting to step into the elevator, Defendant Piwnicki (who wore a shirt to cover his uniform) slammed his hand across her chest and moved her away to create space for his partner to step onto the elevator. When the woman's husband verbally confronted Defendant Piwnicki, Piwnicki responded "Shut the fuck up you coon . . . You fucking cluck[6]." Defendant Piwnicki then pushed the woman and started swinging at her husband. Defendant Piwnicki and the husband attempted to strike each other. During the encounter, Defendant Piwnicki grabbed the husband by the neck, called him a "coon" "cluck" and "nigger, coon." Cook County Deputy Sheriffs separated the husband from Defendant Piwnicki and held him against the wall. Even after the husband was physically detained against the wall by Deputy Sheriffs, Defendant Piwnicki attempted to further attack him saying: "I'll see you in court you fuckin coon, and I'm going to see to it that you will pay." In addition to the wife and husband spontaneously reporting these events to the Deputy Sheriffs, several Deputy Sheriffs corroborated the portions of the incident they witnessed. Defendant Piwnicki followed through with his threat and falsely charged the husband with making threats to the officer. The criminal charges were ultimately dismissed. The allegations made by the couple were sustained by the OPS and it was recommended that Defendant Piwnicki be suspended for twenty days. (CR 308792);

m.       On October 12, 2005, a former, Black male Chicago Police Officer approached Defendant Piwnicki as he was arresting two Black men and asked Defendant Piwnicki for an ID; Defendant Piwnicki refused to provide identification. The two officers engaged in a verbal and physical altercation, and at one point the Black officer said to Defendant Piwnicki "I know how you motherfuckers roll, you're not on the plantation anymore." The Internal Affairs Division (IAD) found that both officers engaged in an unjustified verbal or physical altercation and recommended each officer be suspended for three days. (CR 309085);

---

[6] "Cluck" is a colloquial term for someone who uses cocaine.

14

n.     On July 10, 2006, a young Black man alleged that he was sitting in his yard when Defendant Piwnicki approached him, told him "to come here you fucking Negro," slapped him in the face repeatedly, and planted an empty bottle of alcohol that was laying on the street in the young victim's back pocket. When the victim removed the bottle from his pocket and threw it on the ground, Defendant Piwnicki kicked him in his groin area, repeatedly called him a "negro" and made other derogatory remarks to him including that his "mother must have been a crackhead." Defendant Piwnicki falsely arrested the victim for drinking on the public way. The victim's mother observed the incident and heard Defendant Piwnicki call her son a "nigger." The OPS investigator sustained the allegation that Defendant Piwnicki verbally abused the man, finding there was "sufficient evidence to support the allegation that PO Piwnicki used profane and derogatory language toward the victim." The OPS investigator further found "PO Piwnicki has clearly exhibited a pattern of using profane and derogatory language in his contact with citizens." OPS recommended that Defendant Piwnicki be reprimanded for this incident. (CR 306868);

o.     On February 20, 2011, a Black man alleged that he was standing on the street giving his mother a hug when Defendant Piwnicki and Officer Sullivan drove up in an unmarked squad car. Defendant Piwnicki ordered the victim over to the car, stating "get over here, you fat greasy nigger." When the victim responded "wow" and failed to head towards their car, Defendant Piwnicki and Officer Sullivan exited their car, chased the victim, and knocked a bottle of juice out of his hands. The victim was criminally charged. (CR1043517);

p.     On February 23, 2011, a Black female CDT Transportation driver picked up a passenger and attempted to secure the passenger's belongings in the back storage area of the van pursuant to CDT Transportation policy. After the passenger refused to allow her possessions to be secured in the back of the van or exit the van, the CDT Driver contacted the police and Defendant Piwnicki responded. Defendant Piwnicki ordered the CDT to violate CDT rules and strap the passengers' belongings in the middle of the van. The CDT driver refused to do so. Defendant Piwnicki yelled at the CDT driver, saying "Fuck your policies. I don't give a fuck about your policies." Defendant Piwnicki handcuffed the CDT driver and threatened to tase and arrest her. The CDT driver sustained injuries to her wrist and received medical treatment for this injury. (CR 1043526);

q.     On May 18, 2011, a Puerto Rican woman was driving through an alley east of Cicero Avenue on the way to a medical appointment at a hospital when she was stopped by Defendant Piwnicki, who was responding to a traffic altercation involving other parties. When the victim acknowledged that she was cutting through the alley, Defendant Piwnicki told her that she was breaking the law and stated "You people should go back to Mexico. Because of people like you, this City is messed up." The victim drove away and exited the alley, parked her car and returned to the area to request Defendant Piwnicki's name and badge number. When asked for his name and badge number, Defendant Piwnicki

handcuffed the victim tightly causing her pain and injury, put her in the back of his squad car, repeatedly yelled at her and said "you people only understand beatings." When the victim informed him the handcuffs were too tight, Defendant Piwnicki responded "I don't care what the fuck they are." Defendant Piwnicki also threatened that the victim that she would lose her job at the Chicago Public Schools, where she works as a special education teacher, because he was going to contact them and inform them of her arrest. The victim was eventually released from Defendant Piwnicki's custody and received medical treatment for the slight fracture she sustained to her wrist from the handcuffs Defendant Piwnicki placed on her too tightly. (CR 1045507).

**ANSWER: Officer Piwnicki admits, upon information and belief, that Plaintiff has accurately set forth the allegations made against him in the above complaint registers. Answering further, Officer Piwnicki denies that he engaged in the conduct alleged in this paragraph.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

### The City of Chicago and the Chicago Police Department's Failure to Investigate, Supervise, Monitor and Discipline Defendant Piwnicki

36.    The vast majority of the eighty-nine complaints filed against Defendant Piwnicki were insufficiently or improperly investigated by the Office of Professional Standards (OPS), the Independent Police Review Authority (IPRA) and/or the Internal Affairs Division (IAD), resulting in "not sustained" or "unfounded" allegations.

**ANSWER: Officer Piwnicki admits, upon information and belief, that the majority of the complaint registers made against him resulted in a "not sustained" or "unfounded" finding. Answering further, Officer Piwnicki lacks information or knowledge to admit or deny the remaining allegations contained in this paragraph.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

37.    Of the eighty-nine complaints lodged against Defendant Piwnicki, only five resulted in sustained findings against Defendant Piwnicki for, *inter alia*:

    a.    "insubordination" in 2000 (CR 263697);
    b.    failing to report a fellow member of the CPD who was under investigation by another law enforcement agency in 2004 (CR 297735);
    c.    verbally abusing a Black male arrestee calling him "a fucking Negro" in July of 2005 (CR 306868);
    d.    engaging in excessive force and using profanity against a Black couple in September of 2005, wherein the couple alleged Defendant Piwnicki struck the woman in the chest, grabbed the man by the neck, swore at them, and

called them names, including "nigger" "coon" and "cluck" (CR 308792); and engaging in an unjustified physical or verbal altercation with a Black male Chicago Police Officer in 2005 (CR 309085).

**ANSWER:     Officer Piwnicki admits, upon information and belief, that five of the complaint registers lodged against him resulted in a sustained finding.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

38.     In the limited number of five cases in which the allegations of misconduct lodged against Defendant Piwnicki were sustained, OPS, IPRA or IAD recommended he be suspended for less than thirty days or merely reprimanded.

**ANSWER:     Officer Piwnicki, upon information and belief, admits the allegations contained in this paragraph.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

39.     Such insufficient punishment did not deter Defendant Piwnicki's routine and serial use of excessive force, racist verbal abuse, bringing false charges, other violations of the law and egregious, unprofessional misconduct.

**ANSWER:     Officer Piwnicki denies the allegations contained in this paragraph.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

40.     Because he was insufficiently disciplined for engaging in excessive force and using racist language, he physically abused, injured and racially taunted Plaintiff McClennon making him the 88th victim of the 89 known victims identified in the complaints filed against Defendant Piwnicki with the City of Chicago.

**ANSWER:     Officer Piwnicki denies that he was insufficiently disciplined and further denies the remaining allegations contained in this paragraph.**

**Officer Carey and Margaret McDevitt lack sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

### Plaintiff McClennon's Damages

41.     As a result of these events, Plaintiff lives with the traumatic memory of this incident.

**ANSWER:     Defendant Officers lack sufficient information and knowledge to admit or deny the allegations contained in this paragraph.**

42.     As a direct and proximate result of the Defendant Officers' actions, Plaintiff McClennon suffered and/or continues to suffer, *inter alia*, bodily injury, pain, suffering, loss of liberty, lost wages, severe mental distress, fear, anguish and/or humiliation, medical and legal expenses.

**ANSWER:     Officer Piwnicki and Officer Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge to admit or deny the allegations contained in this paragraph.**

## COUNT I
### [42 U.S.C. § 1983 Claim for Excessive Force/Failure to Intervene]

43.     Plaintiff re-alleges paragraphs 1 through 42.

**ANSWER:     Defendant Officers reincorporate their answers or paragraphs 1 through 42.**

44.     The acts of Defendant Officers Piwnicki, Carey and McDevitt in repeatedly striking and deploying a Taser against Plaintiff, and/or in failing to prevent said abuse, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution to be secure in his person, papers and effects against unreasonable searches and seizures, and his right to due process under the Fourteenth Amendment to the United States Constitution, and thus violated 42 U.S.C. § 1983.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

45.     The actions of Defendant Officers Piwnicki, Carey and McDevitt were the direct and proximate cause of the violations of Plaintiff's Fourth Amendment rights, his physical injuries, mental suffering, anguish and humiliation and expenses, as set forth above.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

## COUNT II
### [42 U.S.C. § 1983 Claim for Malicious Prosecution][7]

---

[7] Plaintiff recognizes that the Seventh Circuit Court of Appeals has held that there is no cause of action in Illinois for malicious prosecution under 42 U.S.C. § 1983. However, Plaintiff wishes to preserve this claim pending consideration of this issue by the United States Supreme Court in *Manuel v. City of Joliet*, No. 14-9496

46.     Plaintiff re-alleges paragraphs 1 through 42.

**ANSWER: Defendant Officers reincorporate their answers or paragraphs 1 through 42.**

47.     Defendants Piwnicki, Carey and McDevitt, despite knowing that no probable cause existed to prosecute Plaintiff McClennon for aggravated battery on a peace officer and for resisting arrest, acted individually, jointly, and/or in conspiracy, to cause Plaintiff to be arrested, detained and prosecuted for those crimes, thereby violating Plaintiff's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution to be free from unreasonable searches and seizures and to due process.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

48.     On November 16, 2016, the prosecution terminated in Plaintiff's favor when he was acquitted at the conclusion of his criminal trial.

**ANSWER: Officers Piwnicki and Carey admit that the charge of aggravated battery to a peace officer was terminated in plaintiff's favor. Answering further, Officers Piwnicki and Carey deny the remaining allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, admits that the charge of aggravated battery to a peace officer was terminated in plaintiff's favor. Answering further, Margaret McDevitt denies the remaining allegations contained in this paragraph.**

49.     As a direct and proximate cause of this violation of his constitutional rights, Plaintiff suffered the injuries set forth above, including, but not limited to, physical restraint, loss of liberty, emotional distress and legal fees.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

## COUNT III
### [42 U.S.C. §§ 1983, 1985, 1986]

50.     Racially Motivated Conspiracy to Deprive Plaintiff of His Constitutional Rights] Plaintiff re-alleges paragraphs 1 through 42.

**ANSWER: Defendant Officers reincorporate their answers or paragraphs 1 through 42.**

51.     Defendants Piwnicki, Carey and McDevitt, together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to commit the unconstitutional overt acts set forth in the facts above.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

52.     Because said conspiracy or conspiracies and the overt actions in furtherance thereof, including, but not limited to, each and every act alleged in the facts above, were performed with the knowledge and purpose of depriving Plaintiff, who is African American, and other African American victims of the equal protection of the laws and/or of equal privilege and immunities under the law, and with racial animus toward Plaintiff, the Defendants also deprived Plaintiff of his right to equal protection of the laws under the Fourteenth Amendment, and 42 U.S.C. § 1985.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

53.     Additionally or alternatively, Carey and McDevitt, knowing that the above § 1985 conspiracy to illegally harm, charge and abuse Plaintiff was about to be committed, and having the power to prevent or aid in preventing the commission of the acts in furtherance of said conspiracy, neglected and/or refused to do so, in violation of 42 U.S.C. § 1986.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

## COUNT IV
### [42 U.S.C. § 1983 Monell Policy Claim Against Defendant City of Chicago]

As this count is not alleged against the individual officer defendants they make no answer to this count at this time.

## COUNT V
### [State Law Claim for Malicious Prosecution]

72.     Plaintiff re-alleges paragraphs 1 through 42.

**ANSWER: Defendant Officers reincorporate their answers or paragraphs 1 through 42.**

73.    Defendants Piwnicki, Carey and McDevitt individually, jointly, and in conspiracy, initiated and continued a malicious prosecution without probable cause against Plaintiff McClennon.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

74.    The prosecution of Plaintiff McClennon terminated in his favor.

**ANSWER: Officers Piwnicki and Carey admit that the charge of aggravated battery to a peace officer was terminated in plaintiff's favor.  Answering further, Officers Piwnicki and Carey deny the remaining allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, admits that the charge of aggravated battery to a peace officer was terminated in plaintiff's favor.  Answering further, Margaret McDevitt denies the remaining allegations contained in this paragraph.**

75.    The Defendant Officers' actions were performed in a willful and wanton manner. The Defendants Officers' actions directly and proximately caused the injury and damage to Plaintiff set forth above.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

## COUNT VI
### [State Law Claim for Intentional Infliction of Emotional Distress]

77.    Plaintiff re-alleges paragraphs 1 through 53, and 72 through 76.

**ANSWER: Defendant Officers reincorporate their answers or paragraphs 1 through 53 and 72 through 76.**

78.    Defendants Piwnicki, Carey and McDevitt individually, jointly, and in conspiracy, engaged in extreme and outrageous conduct by physically abusing and tasing Plaintiff McClennon, and/or by failing to prevent or stop the abuse of Plaintiff, by constructing a false version of events to cover up their conduct and maliciously prosecuting Plaintiff for a felony he did not commit.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

21

79.    Defendants Piwnicki, Carey and McDevitt intended to inflict severe emotional distress on Plaintiff, and knew that their conduct would cause Plaintiff severe emotional distress.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

80.    As a direct and proximate result of Defendant Officers' outrageous conduct, Plaintiff McClennon was injured and has experienced, and continues to experience, severe emotional distress, including fear of the police, nightmares, sleep disruption, and anxiety.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

## COUNT VII
### [State Law Claim for Conspiracy]

81.    Plaintiff re-alleges paragraphs 1 through 63 and 72 through 80.

**ANSWER: Defendant Officers reincorporate their answers or paragraphs 1 through 63 and 72 through 80.**

82.    Defendants Piwnicki, Carey and McDevitt with other unsued co-conspirators, including police personnel, together reached an understanding, engaged and continue to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to falsely arrest, maliciously prosecute Plaintiff and/or to intentionally inflict severe emotional distress on Plaintiff.

**ANSWER: Officers Piwnicki and Carey lack sufficient information or knowledge as to the allegations regarding "unsued co-conspirators" and further deny the remaining allegations contained in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge as to the allegations regarding "unsued co-conspirators" and further, upon information and belief, denies the allegations contained in this paragraph.**

83.    In furtherance of this conspiracy or conspiracies, the Defendants named above, together with their unsued co-conspirators, committed the overt acts set forth above.

**ANSWER: Officers Piwnicki and Carey lack sufficient information or knowledge as to the allegations regarding "unsued co-conspirators" and further deny the allegations contained in this paragraph.**

**Margaret McDevitt lacks sufficient information or knowledge as to the allegations regarding "unsued co-conspirators" and further, upon information and belief, denies the allegations contained in this paragraph.**

84. The conspiracy or conspiracies were and are continuing in nature.

**ANSWER: Officers Piwnicki and Carey deny the allegations contained in this paragraph.**

**Margaret McDevitt, upon information and belief, denies the allegations contained in this paragraph.**

<u>COUNT VIII</u>
**[State Law Respondeat Superior Claim]**

85. Plaintiff re-alleges paragraphs 1 through 42 and 72 through 84.

**ANSWER: Defendant Officers reincorporate their answers or paragraphs 1 through 42 and 72 through 84.**

86. Defendants Piwnicki, Carey and McDevitt, were, at all times material to this Complaint, employees of the Defendant City of Chicago; were acting within the scope of their employment; and their acts, which violated state law, are directly chargeable to the Defendant City under state law pursuant to *respondeat superior*.

**ANSWER: Officers Piwnicki and Carey admit that at all times material to this Complaint they were employees of the City of Chicago and were acting within the scope of their employment. Answering further, Officers Piwnicki and Carey state that this paragraph contains an incomplete and/or an inaccurate statement of the law and therefore Officers Piwnicki and Carey deny the allegations contained in this paragraph. Finally, Officers Piwnicki and Carey deny that they engaged in the acts as set forth by Plaintiff in this complaint.**

**Margaret McDevitt, upon in formation and belief, admits that her deceased husband, Brian McDevitt, at all times material to this Complaint was an employee of the City of Chicago and was acting within the scope of his employment. Answering further, Margaret McDevitt states that this paragraph contains an incomplete and/or an inaccurate statement of the law and therefore she denies the allegations contained in this paragraph.**

<u>COUNT IX</u>
**[745 ILCS 10/9-102 Claim Against Defendant City of Chicago]**

As this count is not alleged against the individual officer defendants they make no answer to this count at this time.

<u>REQUEST FOR RELIEF</u>

**WHEREFORE**, Defendants respectfully request that this Court enter Judgment in their favor and against Plaintiff, including for costs associated with defending this suit, and enter any other relief that this Court deems just and proper.

## JURY DEMAND

Defendants respectfully demand a trial by jury for all issues so triable.

## AFFIRMATIVE DEFENSES

1. At all times relevant to Plaintiff's Complaint, Defendants were government officials, namely police officers, who were performing discretionary functions. At all times material to the events alleged in Plaintiff's Second Amended Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted said Defendants could have believed his or her actions to be lawful, in light of clearly established law and the information that Defendants possessed. Defendants, therefore, are entitled to qualified immunity as a matter of law.

2. The Defendants cannot be held liable for Plaintiff's 42 U.S.C. § 1983 claims unless each individually caused or participated in the alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

3. As to Plaintiff's state law claims, if any, Defendants are not liable because the decision as to what action to take with regard to Plaintiff was a discretionary decision for which the City and its employees are immune from liability. Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-201.

4. As to Plaintiff's state law claims, if any, Defendants are not liable for any state-law claims alleged because a public employee, as such and acting within the scope of his or her employment, is not liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204. Defendants were acting within the scope of their employment.

5. As to Plaintiff's state law claims, if any, an employee or agent of the City is not liable for his or her act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202. The act(s) and/or omission(s) of Defendants were not willful nor wanton. Therefore, Defendants are not liable to Plaintiff.

6. Plaintiff fails to state a claim for malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

7. As to Plaintiff's state law claims, if any, Defendants are not liable to pay attorney's fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney

24

fees and the ordinary expenses and burdens of litigation are not allowable to the successful party.'" *See Kerns v. Engelke*, 76 Ill.2d 154, 166 (1979) (citations omitted).

8.      Any award of damages against the individual Defendants shall be reduced in proportion to the comparative fault of Plaintiff's own acts or omissions, including but not limited to his own willful and wanton conduct which proximately caused the claimed injuries and damages. In addition, at the time of the actions alleged in Plaintiff's Complaint, 735 ILCS 5/2-1116 (2015) was in effect. This statute reduces a plaintiff's recovery according to his contributory negligence and bars his recovery entirely when a plaintiff is more than fifty percent (50%) of the proximate cause of the injury or damage for which recovery is sought.

9.      To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle that Plaintiff had a duty to mitigate his claimed injuries and damages, commensurate with the degree of failure to mitigate attributed to Plaintiff by the jury in this case.

10.     Defendant Officers are entitled to immunity from liability from any injury to Plaintiff caused by their testimony at Plaintiff's criminal trial. *See, e.g., Curtis v. Bembenek*, 48 F.3d 281, 285 (7th Cir. 1995).

11.     To the extent that Plaintiff seeks punitive damages from the estate of Officer Brian McDevitt those damages are not allowed pursuant to *Penberthy v. Price*, 666 N.E.2d 352, 355 (Il. App. Ct. 1996). See also, *Kahlily v. Francis*, 2008 WL 5244596 (J. Kendall, N.D. IL, December 16, 2008).

12.     Plaintiff fails to state a claim for malicious prosecution under 42 U.S.C. §1983. Such a claim is not allowed under the current state of the law as per *Newsome v. McCabe*, 256 F.3d 747, 750-752 (7th Cir. 2001).

Dated:  February 6, 2017                                      Respectfully submitted,

                                                                       */s/ Dana M. O'Malley*
                                                                      Dana M. O'Malley
                                                                      Senior Counsel
                                                              City of Chicago Department of Law
                                                              Federal Civil Rights Litigation Division
                                                                30 North LaSalle Street, Suite 900
                                                                      Chicago, Illinois 60602
                                                                          (312) 744-3982
                                                              Dana.O'Malley@cityofchicago.org

## **CERTIFICATE OF SERVICE**

I hereby certify that I have caused true and correct copies of the above and foregoing **DEFENDANT OFFICERS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT** to be served upon all parties of record via ECF, on February 6, 2017.


*/s/ Dana M. O'Malley*
Senior Counsel